CASE *v.* CITY NATIONAL BANK OF BATTLE CREEK.

1. CANCELLATION OF INSTRUMENTS—BILLS AND NOTES—FRAUD —
   BONA FIDE PURCHASER—BURDEN OF PROOF.
     In a suit for the cancellation of a note and mortgage on the ground of fraud, where plaintiffs established fraud in the inception thereof, the burden of proof was upon defendant to show that it was a *bona fide* purchaser for value.

2. SAME—EVIDENCE—SUFFICIENCY. .
     Where, in such suit, it appeared that the note and mortgage were purchased by defendant bank with the approval of the directors' committee, the unsupported testimony of one member of such committee was insufficient to establish the *bona fides* of such purchase.

---

[1]Cancellation of Instruments, 9 C. J. § 188; [2]Id., 9 C. J. § 195 (Anno).

3. BILLS AND NOTES—NEGOTIABLE INSTRUMENTS LAW — FRAUD —
   BURDEN OF PROOF.
   Under section 58 of the negotiable instruments law (2
   Comp. Laws 1915, § 6097), to establish the claim of *bona
   fide* purchaser, it is not sufficient to show that such pur-
   chaser had no actual knowledge of fraud in the inception
   of the note, but he must also establish that he had no
   knowledge of facts or circumstances that would operate
   to create a belief in his mind that there was fraud.

4. EQUITY — REOPENING CASE FOR ADDITIONAL PROOF RESTS IN
   DISCRETION OF TRIAL COURT.
   Where, in a suit for the cancellation of a note and mort-
   gage on the ground of fraud, the proof had been held in-
   sufficient to establish the *bona fides* of the purchase thereof
   by defendant bank, the denial of a motion to reopen the
   case for additional proof by defendant, *held*, not an abuse
   of discretion; such additional proof having been available
   on the trial and not used because not deemed necessary
   by counsel.

5. SAME—REOPENING CASE NOT MATTER OF RIGHT.
   Reopening a suit in equity for additional proof is not a
   matter of right, but rests within the discretion of the
   court.

Appeal from Barry; McPeek (Russell R.), J. Sub-
mitted June 9, 1927.    (Docket No. 49.)    Decided
October 3, 1927.    Rehearing denied December 1, 1927.

Bill by Lucas Case and another against the City
National Bank of Battle Creek for the cancellation of a
note and mortgage on the ground of fraud.    From a
decree for plaintiffs, defendant appeals.    Affirmed.

*N. A. Cobb* and *Maxwell B. Allen,* for plaintiffs.

*Mechem & Mechem* (*Bernard J. Onen,* of counsel),
for defendant.

MCDONALD, J.    The purpose of this action was to
secure the surrender and cancellation of a note and

[3]Bills and Notes, 8 C. J. § 707; 3 R. C. L. 1033; 1 R. C. L.
Supp. 952; 4 R. C. L. Supp. 231; 6 R. C. L. Supp. 214; [4]Equity,
21 C. J. § 687; [5]Id., 21 C. J. § 687.

mortgage for $2,500 held by the defendant bank; and also two other notes for $1,500 and $1,000, respectively, held by the administrator of the estate of B. M. Keister, deceased.    The suit is based upon fraud in the procurement of the notes and mortgage.    The bank defended on the theory that it was a good-faith purchaser for value; that it bought the note and mortgage from C. C. Fritz for a valuable consideration before maturity and without any notice or knowledge that they were procured by fraud.    The decree went against both the defendant bank and the Keister estate.    As the estate has not appealed, no further reference will be made to it in this opinion.    After the case had been submitted, and findings filed by the trial court, the defendant moved to reopen it for the taking of additional proof.    This motion was denied.    A motion for rehearing was also denied.    From the decree entered, the defendant has appealed.

That the note and mortgage were procured by fraud is clearly established by the evidence.    In fact it is not disputed.    On two occasions the plaintiffs purchased stock in the People's Coal Mining Company, located near Albion, Michigan, for which they gave their notes totaling $8,000.    The sales were procured by gross fraud on the part of the selling agents. Subsequently, the plaintiffs were fraudulently induced to purchase bonds which it was claimed the company was about to issue.    For this they gave their note for $2,500.    Mr. C. C. Fritz, a director and secretary of the company, later approached the plaintiffs and persuaded them to give a new note for $2,500 secured by a mortgage on their farm.    To bring this about, Fritz falsely represented the financial condition of the company and the facts in regard to the bonds.    The note and mortgage were made payable to Fritz.    A few days later he sold them to the defendant, the City National Bank of Battle Creek.    The plaintiffs having

established fraud in the inception of the note and mortgage, the burden of proof was then on the defendant to show that it was a good-faith purchaser for value. Whether the defendant has met this requirement is the principal question which we are called upon to determine.

Mr. Fred A. Allwardt was vice-president of the bank and active in its management. He was also a director, and, with four other directors, composed a committee whose duty it was to pass on the purchase of notes and mortgages. This committee did pass on the transaction with Mr. Fritz and approved in writing the purchase of the note and mortgage. To show lack of knowledge of fraud and good faith, the defendant called Mr. Allwardt, but the other members of the committee were not sworn. Mr. Allwardt gave Mr. Fritz a cashier's check on the 25th of June, 1924, and the record shows that on the same day he and other members of the committee approved the purchase.

It is the contention of the plaintiffs that it was not sufficient for the defendant to show that Mr. Allwardt had no knowledge or notice of the fraud, but that it must also be shown that the other officials who had to do with the transaction had no such knowledge. We agree with this contention. Mr. Allwardt and other members of the committee had been designated by the bank to act for it in this and other similar transactions. They were all acting as agents for the bank, and any knowledge that any of them had was chargeable to the bank. If they or any of them had actual knowledge that the note which they purchased from Fritz had its inception in fraud, the bank cannot be said to be a *bona fide* holder. The only case relating directly or indirectly to this question, as far as our research of the authorities has disclosed, is *Drovers' National Bank* v. *Potvin,* 116 Mich. 474. It was there held that the testimony of the cashier of the bank showing that he had no knowledge of any infirmity in the in-

strument was sufficient, but it appears from the opinion that the reason for so holding was,

"that the bank had no committee or agent to transact business on this loan except himself."

In the instant case, the business was transacted by Mr. Allwardt in conjunction with a committee of which he was a member.     We think the showing required was not complete without the testimony of those who acted with him.     The trial court covered the question in the following language, which we approve:

"My position is that Mr. Allwardt could not in his testimony cover the knowledge and good faith of two other bank officials, executives to that extent, who were clothed with similar authority and charged with a similar duty in this particular instance.     In other words, a showing by one executive officer carries no presumption as to the knowledge and attitude of others who are performing a like office."

Before leaving this question, it may be helpful to call attention to section 58 of the negotiable instruments law, which provides:

"To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."     2 Comp. Laws 1915, § 6097.

It will be observed from this provision of the negotiable instruments law, that one on whom the law imposes the burden of showing good faith must show something more than that he had no actual knowledge of the fraud.     He must show that he had no knowledge of facts or circumstances that would operate to create a belief in his mind that there was fraud.     He must show that there were no facts or circumstances known to him of such a character as to show bad faith in the taking of the instrument.     The testimony of Mr.

Allwardt falls far short of meeting the requirements of the statute. We quote all that was said on that subject:

"*Q.* Did you, as an officer of that bank, or did any officer of that bank, as far as you know, have any knowledge of the statements made here today as to what attempts were made to sell, or what sales were made to Mr. Case and his wife of stock or bonds in this coal mining company?

"*A.* No, sir."

The trial court was not wrong in holding that the defendant had not sustained the burden of proving that it was a good-faith holder. The decree ought to be affirmed unless there was error in refusing to reopen the case for the taking of additional proofs. This question requires no extended discussion. The matter on which the defendant wished to offer additional proofs was an important question in the controversy between the parties. It was the sole defense. It was alleged as such in the answer. It was the only question on which the defendant offered any proof. It was known to the defendant from the beginning that it must make a showing as to its good faith. It did make a showing which the court in an opinion filed as a basis for a decree found to be insufficient. After this opinion was filed, counsel for the defendant made a motion to reopen the proofs and make an additional showing by evidence which was known to it and which was available at the hearing. The fact is that, though the proofs were at hand, the defendant's counsel did not use them because he did not deem it necessary. The failure to offer proofs under such circumstances is not a good reason for asking the court to reopen the case after he has decided it. In any event, the reopening of the case was not something which the defendant was entitled to as a matter of right. It rested in the favor and discretion of the trial court. If the proof to be offered were of a formal or docu-

mentary character, we would probably say that the court abused his discretion in refusing to receive it. But such is not the situation.    Here there was no abuse of discretion and therefore we cannot disturb the court's ruling.

The decree of the circuit judge is affirmed.    A decree will be entered in this court in accordance with this opinion.    The plaintiffs will have costs.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.